UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LEE TETREAU,

Petitioner,

v.

CASE NO. 12-10013
HONORABLE DENISE PAGE HOOD

WILLIE SMITH,

Respondent.

_________________________/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

This matter is pending before the Court on petitioner Kevin Lee Tetreau's *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's Huron County conviction and sentence of four to fifteen years in prison for assault with a dangerous weapon (felonious assault), Mich. Comp. Laws § 750.82. Petitioner alleges that the trial court (1) violated his constitutional right to assistance of counsel and (2) erred when instructing the jury on self defense. Respondent Willie Smith urges the Court through counsel to deny the petition. The Court has reviewed the pleadings and record and determined that the state appellate court's adjudication of Petitioner's claims was objectively reasonable. The habeas petition therefore must be denied.

## I. BACKGROUND

Petitioner was charged with felonious assault and tried before a jury in Huron County

Circuit Court. The charge

> arose out of an incident in the bar area of a bowling alley in Colfax Township, Michigan on the night of September 6, 2008 or early morning of September 7, 2008. At the bar, defendant engaged in a heated discussion with his cousin Richard Tetreau. During their discussion, a friend of Tetreau's, Russell Parks, approached them. Parks, who was holding a beer bottle at the time, told them to "break it up" and told defendant to leave Tetreau alone. Defendant then engaged in a verbal argument with Parks and said to him, "you don't know me" or "you don't know who I am," and "I'll fucking kill you." As he was making that statement, defendant pulled Parks toward himself with one hand, Parks' beer spilled all over, and defendant used his other hand to put a knife to Parks' neck. The knife appeared to be a pocketknife. Parks received a small scratch or cut on his neck, which produced blood. Bar security quickly approached them and escorted defendant out. At trial, a DVD of the events was played for the jury several times.
>
> Defendant testified that he was afraid and felt threatened by Tetreau and Parks because of their aggressive manner and because Parks had a beer bottle in his hand. According to defendant, he acted in what he believed was self-defense when he held the knife to Parks' neck. Defendant admitted during cross-examination that he could have walked away at any time, although he would not have wanted to turn his back to a person holding a beer bottle. Defendant believed that Tetreau and Parks should have walked away.

*People v. Tetreau*, No. 291373, 2010 WL 2431901, at *1 (Mich. Ct. App. June 17, 2010).

Petitioner represented himself at trial, and on January 27, 2009, the jury found him guilty, as charged, of felonious assault. On March 2, 2009, the trial court sentenced Petitioner as a habitual offender, fourth offense, to imprisonment for four to fifteen years.

On appeal from his conviction, Petitioner argued that (1) the trial court denied him his constitutional right to the assistance of counsel by forcing him to proceed *pro se* without first obtaining a valid waiver of the right to counsel and (2) the trial court erred by instructing the jury on the use of deadly force in self defense and by refusing to instruct the jury on the use of non-deadly force in self defense. The Michigan Court of Appeals rejected Petitioner's claim and affirmed his conviction in an unpublished, *per curiam*

opinion. *See id.* Petitioner raised the same two claims and two new claims regarding his appellate attorney in the Michigan Supreme Court. On February 7, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Tetreau*, 488 Mich. 1041; 793 N.W.2d 702 (2011) (table).

On January 3, 2012, Petitioner filed his habeas corpus petition, raising the four claims that he presented to the Michigan Supreme Court. The Court ordered Petitioner to show cause why his habeas petition should not be dismissed for failure to raise his claims about appellate counsel at all levels of state court review. In response, Petitioner asked the Court to delete his claims about appellate counsel and to allow him to proceed with his other claims. Respondent subsequently filed an answer to the habeas petition, and Petitioner filed a reply brief. The case is now ready for adjudication of Petitioner's claims that he was forced to represent himself at trial and that the jury instructions were defective.

## II. STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

## III. DISCUSSION

### A. The Right to Counsel and Waiver of the Right to Counsel

Petitioner alleges that the trial court deprived him of his Sixth Amendment right to counsel by forcing him to represent himself at trial without first obtaining a valid waiver of the right to counsel. Petitioner asserts that he is not an attorney, that he did not ask to represent himself, and that he did not waive his right to counsel. He claims that he was forced either to represent himself or to use incompetent counsel. The Michigan Court of Appeals disagreed and held that Petitioner's waiver of his right to counsel was knowingly, intelligently, and voluntarily made.

#### 1. Legal Framework

"It is beyond dispute that '[t]he Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process.'" *Marshall v. Rodgers*, __ U.S. __, __, 133 S. Ct. 1446, 1449 (2013) (*per curiam*) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004)). A trial obviously is a "critical stage" of the criminal process because it holds "significant consequences for the accused." *Bell v. Cone*, 535 U.S. 685, 695-96 (2002). Therefore, "[w]aiver of the right to counsel, as of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.' " *Tovar*, 541 U.S. at 81, (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Godinez v. Moran*, 509 U.S. 389, 402 (1993) (stating that, when a defendant seeks to waive his right to counsel, the waiver must "be intelligent and voluntary before it can be accepted"). "Although a defendant need not himself have the skill and experience of a lawyer in order

competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975) (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

**2. The Facts**

The Michigan Court of Appeals correctly summarized the relevant facts in Petitioner's case as follows:

> Defendant was first represented in circuit court by court-appointed attorney Jill Schmidt. At a hearing on December 1, 2008, Schmidt stated that defendant had asked her to withdraw. Defendant stated that he no longer wanted Schmidt to represent him because she had lied to him, he had to "twist her arm to get her to file" change of venue motions, she had only spoken to him once, she failed to take his telephone calls, and she disagreed with him. The trial court informed defendant that if he refused to cooperate with Schmidt, the court would allow her to withdraw, and that he had the right to represent himself. The court further stated, "But you don't have the right to choose the lawyer that you-that the Court appoints for you, she was appointed to represent you, you don't want her, then you have no lawyer, that's your call." Defendant indicated that he was willing to represent himself, but needed access to a law library or some other source of "controlling federal cases that have to do with self-defense." The court allowed Schmidt to withdraw and appointed her as stand-by counsel. Defendant was permitted to ask her questions and obtain legal research from her.
>
> Notwithstanding the trial court's decision to permit defendant to represent himself, the court appointed attorney Gerald Prill to represent defendant at a December 23, 2008, hearing. The court stated that defendant "need[ed] this professional assistance" and asked that defendant cooperate and allow Prill to represent him. Defendant objected to Prill being appointed, stating that Prill was a former prosecuting attorney and, therefore, could not objectively represent him. The court stated that there was no conflict of interest and no legal or ethical prohibition against Prill representing defendant.

Approximately three weeks later, at a January 12, 2009, *Walker*[1] hearing, Prill requested to withdraw. Prill explained that in 2005, he had prosecuted defendant on a charge of "operating while intoxicated, third offense" and defendant recently filed a motion for relief of judgment pertaining to the 2005 conviction. Defendant alleged in his motion that false statements were admitted in a *Walker* hearing for that case and that Prill presented false statements or false information to the court. The trial court then interjected:

> *Trial Court*. Are you asking to withdraw as counsel?
>
> *Prill*. I would, Your Honor.
>
> *Trial Court*. And this is the second one now, Mr. Tetreau, right?
>
> *Defendant*. I know, Your Honor, but I would just as soon-I don't need another attorney, I'll represent myself.
>
> *Trial Court*. I'm going to appoint you another attorney, I'm going to appoint Mr. Woodworth to represent you.
>
> *Defendant*. He's the other party in my last case with the 6.500 motion, he was my attorney back then.
>
> *Trial Court*. And you're claiming that he was incompetent or that you had incompetent-
>
> *Defendant*. It's ineffective assistance of counsel.
>
> *Trial Court.* I guess we can't appoint you. I'm gonna appoint you a lawyer whether you like it or not. You don't have to accept it if you don't want to, I'll have stand by counsel, but I'm not going to be spending time fooling around with you, Mr. Tetreau.
>
> *Defendant*. I understand.
>
> Defendant subsequently stated that he had no problem with the court appointing attorney Elizabeth Weisenbach to represent him. The court appointed Weisenbach, and she represented defendant during the *Walker* hearing.

[1] *People v. Walker (On Rehearing)*, 374 Mich. 331; 132 NW2d 87 (1965).

At a hearing on January 26, 2009, the day before trial, the court stated:

> My understanding is that the defendant has refused to cooperate with his appointed defense counsel and wants to represent himself, he has the right to do that, however I'm having counsel remain as stand-by counsel that can give him advice if he wants it during the course of the trial.
>
> But he's on his own. And you know, Mr. Tetreau, why you're making this decision, I don't know. My experience has been without question that anyone who does this is just digging themselves a hole.
>
> But if you insist on waiving your right to counsel by representing yourself, then I guess we'll let you do that. But this trial has to be something manageable, it's not going to be some kind of carnival. And we're not going to do everything you want to do, it's going to be conducted in accordance with the law.

Defendant subsequently requested access to jury instructions, specific federal case law, and a defender trial handbook. The court allowed defendant to borrow a volume of Standard Criminal Jury Instructions, stated that defendant could borrow a trial handbook if there was one available, and requested that Weisenbach provide defendant with copies of the cases he had requested. Defendant represented himself at trial the next day.

Over the course of the proceedings leading up to trial, defendant sent the trial court several letters regarding his representation. In letters dated November 7, 2008 and November 17, 2008, defendant stated that there had been a breakdown in his relationship with Schmidt, and he requested new counsel. In a December 9, 2008, letter, defendant indicated that he wished to represent himself and asked that the "privileges and rights afforded other attorneys" be afforded to him. In a letter dated December 26, 2008, defendant stated that Prill could not represent him because of a conflict of interest and that he was asserting his "constitutional rights to represent" himself. Defendant stated that he must be afforded law library access and "any other amenities a court appointed attorney would be afforded." The record does not indicate whether defendant had any contact with the court between the *Walker* hearing when the court appointed Weisenbach and the January 26, 2009, hearing when the court stated that defendant wished to represent himself and that he would be allowed to do so.

*Tetreau*, 2010 WL 2431901, at *1-*3 (footnote in original).

**3. Analysis**

The record, as summarized above, indicates that the trial court warned Petitioner against representing himself. At the hearing on December 23, 2008, the trial court stated that Petitioner needed professional assistance. The court also insinuated that Petitioner was in a jam because he was trying to represent himself. (Hr'g at 3, Dec. 23, 2009.) At the subsequent hearing on January 26, 2009, the trial court stated that, in the court's experience, people who represented themselves were "just digging themselves a hole." (Hr'g Tr. 3, Jan. 26, 2009.) The court also informed Petitioner that the trial would have to be manageable and "conducted in accordance with the law." *Id*.

Petitioner alleges that the trial court failed to comply with the requirements of Michigan Court Rules 6.005(D) and 6.005(E), which explain the advice that trial courts must give defendants before allowing them to represent themselves. But "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (*per curiam*)). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241; *Hodges,* 423 U.S. at 21). The Michigan Court of Appeals, moreover, opined that the trial court substantially complied with all the requirements necessary for a valid waiver of the right to counsel. *Tetreau*, 2010 WL 2431901, at *5-*6. The state court's interpretation of state law binds this Court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *McGuire*, 502 U.S. at 67–68, and *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).

Furthermore, the record indicates that Petitioner did not want or request counsel.

He repeatedly waived his right to counsel and asserted his right to represent himself. For example, when the trial court informed Petitioner at the hearing on December 1, 2008, that the court would not be appointing another attorney, Petitioner responded, "Okay. That's fine." (Hr'g on Mot. to Withdraw, 6, Dec. 1, 2008.) And at the hearing on January 12, 2009, he stated that he would represent himself and did not need another attorney. (*Walker*, Hr'g 6, Jan. 12, 2009.) Although he ultimately allowed his third appointed attorney (Ms. Weisenbach) to represent him at that hearing, the trial court determined on January 26, 2009, that Petitioner was refusing to cooperate with Ms. Weisenbach. Petitioner did not dispute the court's conclusion. Instead, he objected to having a DVD of the crime introduced at trial, and he requested a defender's trial handbook and copies of some court decisions. As the Michigan Court of Appeals recognized,

> [w]hile defendant did not make an express waiver of his right to counsel at the January 26, 2009, hearing, he repeatedly and unequivocally requested to represent himself over the course of the proceedings, indicated that he was fully aware of the consequences of such a decision, and appeared fully prepared to represent himself at the January 26, 2009, hearing by requesting the materials he deemed necessary to prepare for trial.

*Tetreau*, 2010 WL 2431901, at *6.

The Court concludes from the record that Petitioner wanted to represent himself at trial and that he knowingly, intelligently, voluntarily, and unequivocally waived his right to counsel. Even if the Court were to conclude otherwise, the state court's holding – that Petitioner's waiver was unequivocal – was not unreasonable. As in *Faretta*, "[t]he record affirmatively shows that [Petitioner] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." *Faretta*, 422 U.S. at 835. Additionally, Petitioner was warned that it was a mistake to proceed without an attorney and that he

would be required to follow proper procedures. Petitioner nevertheless persisted in representing himself. He has no right to habeas relief on the basis of his claim that the trial court deprived him of his constitutional right to assistance of counsel.

**B. The Jury Instructions**

Petitioner's second and final claim challenges the trial court's jury instructions on his theory of self defense. Petitioner alleges that the trial court erred by instructing the jury on the use of deadly force in self defense and that the court abused its discretion by not instructing on the use of non-deadly force. The Michigan Court of Appeals rejected both arguments.

**1. Clearly Established Federal Law**

"[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). The pertinent question on habeas review of a jury instruction is " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *McGuire*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). To obtain habeas relief, the instruction must have infused the trial with unfairness. *Id*. at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)).

**2. Instructing on the Use of Deadly Force**

Petitioner contends that the trial court erred by instructing the jury on the use of deadly force because the instruction permitted an acquittal only if he honestly and reasonably feared death or serious bodily harm. *See* Trial Tr., 281, Jan. 27, 2009. Petitioner claims that he did not use deadly force, that he did not intend to commit murder

or great bodily harm, and that the evidence did not support a jury instruction on the use of deadly force in self defense.

**a. Procedural Default**

Respondent argues that Petitioner's claim is procedurally defaulted because he failed to make a contemporaneous objection to the alleged error at trial. A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997).

A habeas petitioner procedurally defaults a claim if (1) he failed to comply with a state procedural rule, (2) the state court enforced the rule, and (3) the rule is an adequate and independent state ground for denying review of a federal constitutional claim. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (quoting *Tolliver v. Sheets*, 594 F.3d 900, 928 n. 11 (6th Cir. 2010) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). A federal habeas court is not required to consider procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The state procedural rule in question here is the contemporaneous-objection rule, which requires defendants in criminal cases to object to an error in the jury instructions before the jury retires to consider the verdict. *See People v. Carines*, 460 Mich. 750, 761-67; 597 N.W.2d 130, 138-140 (1999). Petitioner violated this rule by failing to object at trial to the jury instruction on the use of deadly force in self defense. The Michigan Court of Appeals was the last state court to issue a reasoned opinion on Petitioner's claim, and it enforced the contemporaneous-objection rule by reviewing Petitioner's claim for "plain

error." The Court of Appeals noted that Petitioner did not object to the jury instruction on deadly force and he affirmatively approved the instructions as read to the jury. This application of plain-error review constituted an independent and adequate state ground for denying Petitioner's claim. *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011).

To summarize, the first three elements of procedural default are satisfied. Petitioner violated a state procedural rule, the last state court to review his claim enforced the rule, and the rule was an independent and adequate state ground for denying review of Petitioner's constitutional claim. The remaining question is whether Petitioner has shown "cause" for his error and prejudice or a miscarriage of justice.

Petitioner has not alleged either cause for his error or prejudice. Instead, he maintains that his claim is not procedurally defaulted because the state court reviewed his claim on the merits.

Although the Michigan Court of Appeals did determine that the trial court properly instructed the jury on the use of deadly force, it did so while reviewing Petitioner's claim for "plain error." Plain error was an alternative basis for denying the claim. Thus, the claim is procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (stating that "a state court need not fear reaching the merits of a federal claim in an *alternative* holding" and that "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law"); *Johnson v. Sherry*, 586 F.3d 439, 445 n.3 (6th Cir. 2009) (stating that the procedural default rule applied where the state court discussed the merits of the petitioner's claim as an alternative basis for denying the claim). The Court therefore rejects Petitioner's argument, and because he has not alleged "cause and

prejudice" or a miscarriage of justice, his claim is procedurally defaulted.

**b. On the Merits**

Even if Petitioner's claim were not procedurally defaulted, the claim lacks substantive merit because the evidence could support the conclusion that Petitioner used deadly force during his assault on Parks. As the Michigan Court of Appeals correctly recognized, Petitioner

> did more than display a knife at his side. Defendant first engaged in a verbal argument with Parks. [Richard] Tetreau and Parks both testified that during the argument, defendant said to Parks, "I'll fucking kill you." As he was making that statement, defendant pulled Parks toward himself with one hand . . . and . . . used his other hand to put his pocketknife to Parks' neck. [Defendant] held the knife against Parks' neck, giving him a scratch or cut that produced blood. Defendant did not deny cutting Parks' neck with the knife. Although defendant's actions did not result in death, and defendant claimed at trial that he did not intend to kill or seriously injure Parks, his actions were such that a reasonable jury could conclude that "the natural, probable, and foreseeable consequence of said acts is death." [*People v. Pace*, 102 Mich. App. 522, 534; 302 N.W.2d 216 (1980)]. A pocketknife may be used as a dangerous weapon and the throat a vulnerable area of the body. See *People v. Vaines*, 310 Mich. 500, 506; 17 NW2d 729 (1945) (stating that an ordinary pocketknife is not dangerous per se when carried for peaceful purposes but it may be considered a dangerous weapon under MCL 750.227 when used "as a weapon of assault or defense"); see also *People v. Lynn*, 459 Mich. 53, 58-59; 586 NW2d 534 (1998), quoting *People v. Brown*, 406 Mich. 215, 222-223; 277 NW2d 155 (1979) (stating that an instrument is a dangerous weapon under MCL 750.227 when "used, or intended for use, as a weapon for bodily assault or defense"). If defendant had applied even minimal, additional pressure to Parks' neck, or if Parks had moved even slightly into the knife as he reacted to the situation, defendant's actions could easily have resulted in Parks' death.[2]

*Tetreau*, 2010 WL 2431901, at *8 (footnote in original).

Given these facts and the relevant state court decisions, the instruction on the use

[2] The DVD video recording of the event reveals that after defendant suddenly produced the knife and raised it to Parks' neck, Parks pulled backward and away from the knife.

of deadly force did not infuse Petitioner's trial with such unfairness as to violate Petitioner's right to due process. And because the evidence could support the conclusion that Petitioner used deadly force, the state appellate court's conclusion – that the trial court properly instructed the jury with the use of deadly force in self defense – was reasonable. Petitioner therefore is not entitled to habeas corpus relief on the basis that the trial court instructed his jury on the use of deadly force in self defense.

**3. The Lack of an Instruction on the Use of Non-Deadly Force**

Petitioner argues that the trial court abused its discretion by denying his request to instruct the jury on the use of non-deadly force in self defense. The trial court declined Petitioner's request because Petitioner used a dangerous weapon (a knife) during the assault. (Trial Tr. 250-53, Jan. 27, 2009). Petitioner claims that, by refusing his request, the trial court infringed on the jurors' fact-finding function and deprived him of the opportunity for a verdict consistent with his testimony and theory of the case.

**a. The Trial Court's Error**

The Michigan Court of Appeals determined that, although a jury could have concluded that Petitioner used deadly force, a reasonable jury also could have concluded that Petitioner used non-deadly force. In the state court's words,

> [w]hile defendant held a pocketknife, which may be used as a dangerous weapon, to Parks' neck, and held it close enough to draw blood, defendant's actions only produced a small cut or scratch on Parks. Defendant did not stab Parks or make any stabbing motions in his direction. Thus, a reasonable jury could conclude that defendant's actions were similar to the defendant's actions in *Pace,* which amounted to nothing more than a threat of violence and constituted non-deadly force.

*Tetreau*, 2010 WL 2431901, at *8.

The Court of Appeals noted that, "in cases 'where the evidence is conflicting on

whether deadly force has been employed' the trial court may give the jury instructions on both deadly and non-deadly force . . . ." *Id*. (quoting *Pace*, 102 Mich. App. at 534 n.7). The Court of Appeals concluded that the trial court abused its discretion in failing to instruct the jury on the use of non-deadly force in self defense, thereby precluding the jury from determining whether Petitioner used deadly or non-deadly force. The Court of Appeals nevertheless determined that the error was harmless, given "the dearth of evidence supporting [Petitioner's] claim that he acted in self-defense." *Id*. at *9.

**b. Harmless Error Analysis**

This Court will assume, for purposes of this opinion, that the trial court's error in failing to instruct the jury on the use of non-deadly force amounted to constitutional error. In a habeas corpus proceeding under 28 U.S.C. § 2254, a federal court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). *Fry v. Pliler*, 551 U.S. 112, 121-122 (2007); *Jaradat v. Williams*, 591 F.3d 863, 869 (6th Cir. 2010). Under *Brecht*, a constitutional error is harmless unless it had a " 'substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had "substantial and injurious effect or influence in determining the jury's verdict," that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

The Michigan Court of Appeals determined that reversal was not warranted in Petitioner's case because the trial court's error was not outcome-determinative. In reaching this conclusion, the Court of Appeals stated:

> Defendant testified that he was afraid during his argument with Parks. He testified that he felt threatened by [Richard] Tetreau and Parks because of their aggressive manner and because Parks had a beer bottle in his hand, and that he acted to stop the incident from escalating. However, nothing in the record other than defendant's testimony that he was afraid and felt threatened supports a conclusion that he was in danger of "the imminent unlawful use of force by another" and was, therefore, justified in using even non-deadly force. CJI2d 7.22. [Richard] Tetreau had no weapons, was not holding anything, and did not verbally threaten defendant. Parks had no weapons and, although he was holding a beer bottle, he never raised the bottle as if to use the bottle as a weapon. There was no physical contact between Parks and defendant until defendant pulled Parks toward himself and held the knife to his neck. Further, defendant admitted that any of them could have walked away at any time.

*Tetreau*, 2010 WL 2431901, at *9.

Based on these facts, the Court agrees with the Michigan Court of Appeals that "there was insufficient evidence to support [Petitioner's] self-defense claim . . . ." *Id*. Therefore, the trial court's instructional error could not have had a substantial and injurious effect or influence in determining the jury's verdict and was harmless. Petitioner has no right to relief on his claim about the lack of a jury instruction on the use of non-deadly force in self defense.

## IV. CONCLUSION

The state appellate court's decision was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. The Court therefore **DENIES** Petitioner's application for the writ of habeas corpus (Docket No. 1, dated January 3, 2012).

## V. REGARDING A CERTIFICATE OF APPEALABILITY AND THE APPELLATE FILING FEE

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that, when a district court has rejected the petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").

Reasonable jurists could debate the Court's assessment of Petitioner's constitutional claim that the trial court deprived him of the right to counsel. The Court therefore grants a certificate of appealability on Petitioner's first claim. The Court declines to issue a certificate of appealability on Petitioner's second claim because reasonable jurists could not conclude that Petitioner's challenge to the jury instructions warrants encouragement to proceed further. Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: August 29, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 29, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager